# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MARY ONSONGO, individually**
**And for the Estate of Evans Onsongo,**                )
                                                        )
**ENOCH ONSONGO,**                                      )
                                                        )
**PERIS ONSONGO,**                                      )
                                                        )
**VANICE ONSONGO,**                                     )
                                                        )
**ONSONGO MWEBERI,**                                    )
                                                        )
**SALOME MWEBERI,**                                     )
                                                        )
**BERNARD ONSONGO,**                                    )
                                                        )
**EDWIN NYANGAU ONSONGO,**                              )
                                                        )
**GEORGE ONSONGO,**                                     )
                                                        )
**EUNICE ONSONGO,**                                     )
                                                        )
**PENINAH ONSONGO,**                                    )
                                                        )
**GLADYS ONSONGO;**                                     )
                                                        )
**OSBORN OLWCH AWALLA, individually and**               )
**As Personal representative of the Estates**           )
**of Josia Owuor and Edwina Owuor,**                    )
                                                        )
**WARREN AWALA,**                                       )
                                                        )
**VINCENT OWUOR;**                                      )
                                                        )
**MARTHA ACHIENG ONYANGO, individually**                )
**and for the Estate of Eric Onyango,**                 )
                                                        )
**JULIANA ATIENO ONYANGO;**                             )
                                                        )
**and**                                                 )
                                                        )
**IRENA KUNG'U**                                        )

1



Plaintiffs,

v.

REPUBLIC OF SUDAN, MINISTRY OF THE
INTERIOR OF THE REPUBLIC OF THE
SUDAN, ISLAMIC REPUBLIC OF IRAN,
IRANIAN REVOLUTIONARY GUARDS
CORPS, IRANIAN MINISTRY OF
INFORMATION AND SECURITY

Defendants.

Civil Action No.

## COMPLAINT

Plaintiffs through undersigned counsel respectfully bring this action against the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security jointly and severally, and allege as follows:

1.    This action is brought by Plaintiffs for serious injuries and deaths suffered as a result of the August 7, 1998 terrorist attacks upon the United States Embassies in Nairobi, Kenya and in Dar Es Salaam. The terrorist attack was carried out by the al Qaeda terrorist group, headed by Osama Bin Laden, and was provided with material support or resources including cover, sanctuary, technical assistance, explosive devices and training by Defendants.

## JURISDICTION AND VENUE

2.    Plaintiffs bring this action pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq*, and the laws of the jurisdiction of residence of Plaintiffs.

3.    This court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1330(a), 1331, and 1605A.

4.      Defendants are subject to suit in the courts of the United States pursuant to 28. U.S.C. § 1605A, an exception to the Foreign Sovereign Immunities Act allowing suit against foreign state sponsors of terror, for extrajudicial killings and other terrorist actions committed by said states and their agents.

5.      Pursuant to 28 U.S.C. § 1605A, jurisdiction is proper where either the claimant or victim is a United States citizen or where the victim at the time of the terrorist attack was an employee of the Government of the United States acting within the scope of the employee's employment.

6.      Plaintiffs and/or decedents are United States citizens, United States nationals, and/or employees of the Government of the United States, employed at the United States Embassy in Nairobi, Kenya and/or an individual performing a contract awarded by the United States government acting within the scope of the employee's employment at the time of the terrorist attack.

7.      Private actions for personal injury and related torts brought by Plaintiffs against foreign state sponsors of terrorism under 28 U.S.C. § 1605A(c) are uniquely and wholly Federal versions of what are traditionally state-law causes of action.  These purely Federal tort actions were signed into law on January 22, 2008.  Cf. P.L. 110-181 § 1083 (2008).

8.      Plaintiffs bring their claim within 28 U.S.C. § 1605A(c)(2)'s statute of limitations of "10 years after the date on which the cause of action arose."

9.      Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391 (f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## DEFENDANTS

10.    Defendant, the Republic of Sudan is a foreign state which at all times alleged hereinafter was designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405 (J)).

11.    Defendant, the Ministry of the Interior of the Republic of the Sudan, is an agency of Defendant, the Republic of the Sudan. Its activities at the time of this occurrence included the support of terrorist activities directed against foreign targets by terrorist groups operating with cover of the Republic of the Sudan.

12.    The Defendant, the Republic of the Sudan, acting through the Defendant, the Ministry of the Interior of the Republic of the Sudan, entered into an arrangement with Al Qaeda and Hezbollah under which those organizations received shelter and protection from interference while carrying out planning and training of various persons for terrorist attacks, including the August 7, 2008 attacks on the United States Embassies in Nairobi, Kenya and in Dar Es Salaam, Tanzania. These included an organizational and planning meeting within the Republic of Sudan between Al Qaeda and Hezbollah officials, with the purpose of planning and carrying out the attacks on the United States Embassy in Kenya, which caused the injuries and death to Plaintiffs' as, described hereinafter.

13.    Defendant, the Islamic Republic of Iran is a foreign state which at all times alleged hereinafter was designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405 (J)).

14     Defendants the Iranian Revolutionary Guards Corps ("IRGC") by and through its Quds Force Division ("Quds"), and the Iranian Ministry of Information and Security ("MOIS")

are agencies of the Defendant, the Islamic Republic of Iran, responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

## STATEMENT OF FACTS

15.    Starting in 1989, an international terrorist group emerged dedicated to opposing non-Islamic governments with brutal force and terrifying violence. This organization grew out of "mekhtab al khidernat" (the "Azzam Service Center") organization which maintained offices in Peshawar, Pakistan, and received funds from Islamic charities, wealthy Saudi families, mosques, legitimate businesses and criminal enterprises, among others.

16.    Under the leadership of Osama Bin Laden ("Bin Laden"), among others, the Azzam Service Center expanded, created terrorist cells in various parts of the world, financed and supported other terrorist groups dedicated to committing acts of violence, murder, destruction and mayhem. From approximately 1989 until the present, this terrorist group called itself "Al Qaeda".

17.    In the early 1990's, the government of Sudan sent overtures to Osama Bin Laden and al-Qaeda officials, inviting the group to relocate en mass from Afghanistan to the Sudan. The representatives of the Sudanese government promised the support of their government should al-Qaeda relocate.

18.    The government of Sudan is run by President Field Marshall Omar Hassan al-Bashir, the head of state of the Sudan, through an alliance of the military and the National Congress Party, formerly the National Islamic Front (NIF).

19.    In or about 1991, the leadership of Al Qaeda, including Bin Laden, relocated to

the Sudan. Al Qaeda was headquartered in the Sudan from approximately 1991 until approximately 1996.

20.     From approximately 1991 to 1996, Bin Laden resided at a large villa in Khartoum, Sudan, with an office and guesthouse. During this time, the Sudanese government provided security for Al Qaeda consisting of Sudanese men dressed in army fatigues and jeeps with Sudanese army license plates.

21.     At various times between 1991 and 1996, Al Qaeda, under the direction of Bin Laden, stated privately to Al Qaeda members that they should put aside differences with Shiite Muslim terrorist organizations, including the Government of the Islamic Republic of Iran and its affiliated terrorist group Hezbollah.

22.     The Islamic Republic of Iran chose Lebanon as a destination for the implementation of the Islamic revolution due to its strong ties between the shi'ite community of Lebanon and Iran. Based on the ideological and spiritual allegiance with Lebanon the Islamic Republic of Iran had a key role in the foundation of Hezbollah.

23.     Hezbollah is an organization of Lebanese Muslims who are adherents of the Shia or Shiite faction of Islam. It represents itself as "an Islamic freedom fighting movement" which views any part of the Near East under the control of the State of Israel as "occupied land". Hezbollah advocates the expulsion of the United States from the Near East and is committed to violent action to that end and to the termination of the existence of the State of Israel.

24.     Hezbollah has been designated by the United States as a Specially Designated Terrorist continuously since 1995, as a Foreign Terrorist Organization since 1997, and as a Specially Designated Global Terrorist since 2001.

25.     The ties between Hezbollah and Iran are evidenced by their interpersonal religious

6

channel, frequent meetings between Hezbollah's leaders and Iranian officials, politicians and delegates and financial, organizational and military connections.

26.     Defendant Iranian Revolutionary Guards Corps played a substantial role in the establishment of Hezbollah as explained by Na'im Qasem, one of the founders of Hezbollah: "upon its foundation, Hezbollah saw a possibility for achieving its goals and aspirations through the backing and reinforcement expressed by the Islamic Republic of Iran. This was manifested through the dispatch of the Islamic Revolutionary Guard of Lebanon in the wake of the Israeli invasion with a mission to train and recruit Lebanese youth willing to combat Israel."

27.     From its inception in the early 1980's until today Hezbollah officials maintain close relationships with official representatives in Iran's embassies in Beirut and Damascus as well as Iranian Revolutionary Guards officials.

28.     An official connection between Iran and Hezbollah exists as currently, the nine member Shura council of Hezbollah, the representatives responsible for translating the political decisions made by the council into operative decisions, consists of two government-appointed Iranian clerics.

29.     Essam Al Riddi ("Al Riddi"), a pilot for Bin Laden, discussed the possibility of Al Riddi transporting stinger missiles from Pakistan to the Sudan. Bin Laden assured Al Riddi that the Sudanese intelligence agencies would cooperate with the weapons transfer.

30.     Sudanese intelligence officers were organized into a "delegation office" to meet the needs of the Al Qaeda group in the Sudan. This delegation office provided security for Al Qaeda and facilitated the movement of weapons in and out of the country.

31.     President al-Bashir provided a letter to Bin Laden explicitly approving of the presence of Al Qaeda in the Sudan. The letter allowed Al Qaeda members to bypass tax and

customs collection on international shipments and guaranteed their shipments, both incoming and out-going, would not be inspected.

32.    Weapons and explosive shipments to Al Qaeeda were moved through a quay, protected by the Sudanese military in Port Sudan, into a barracks used by Sudanese armored and mechanized infantry. The letter from al-Bashir allowed shipments from overseas to bypass inspection at a port and then travel to Khartoum without inspection by local police.

33.    The Sudanese government employed Al Qaeda to manufacture chemical weapons in a section of Khartoum called Hilat Koko, for use in the genocidal campaign in southern Sudan. Al Qaeda entered into a transaction to purchase uranium through the former President of the Sudan. The quality of the uranium was tested in Hilat Koko.

34.    At various times between 1991 and 1996, Mamdouh Mamud Salim ("Salim"), an Al Qaeda operative, met with Iranian religious officials to arrange an agreement between Al Qaeda, the National Islamic Front (NIF) of Sudan, and elements of the Government of Iran to work together against the United States, Israel and other western countries.

35.    As a result of those meetings, Al Qaeda forged alliances with the NIF and with representatives of the government of the Islamic Republic of Iran, and its associated terrorist group Hezbollah, for the purpose of working together against their perceived common enemies in the West, particularly the United States.

36.    The NIF, under the leadership of Hassn al-Turabi ("Turabi") intensified its domination of the government of Sudanese President General Bashir. The NIF organized its own militia and maintained ties to Iran, including its visit to Iranian President Rafsanjani in December 1991 and a high level Sudanese military delegation visit to Teheran, Iran during the summer of 1992.

8

37.    Following discussions between Al Qaeda and Iranian leaders in Sudan, senior Al Qaeda operatives and trainers traveled to Iran to receive training in explosives. In the fall of 1993, a delegation of Al Qaeda operatives traveled to Lebanon for further training in explosives, intelligence and security from the Iranian Revolutionary Guards.

38.    Bin Laden expressed particular interest in Iran's knowledge of advanced explosives such as truck bombs that were used to kill 241 United States Marines in Lebanon.

39.    Iran established Sudan terrorist training bases operated by the Islamic Revolutionary Guards, primarily through its Quds Force, that trained the Sudanese as well as other operatives.

40.    The Quds (Jerusalem) Force is one of five branches of the Islamic Revolutionary Guards, the strongest military-security body in Iran and the regime's main support. The Quds Force was established at the beginning of the 1990's and is an elite unit numbering in the thousands. The Quds Force activities range from establishing educational systems for indoctrination and civilian infrastructures supporting Iran and its radical ideology through operating armed terrorist and guerilla cells and acting to subvert secular, pro-Western Arab-Muslim regimes.

41.    Iran maintained its presence in Sudan by providing arms, instructors and funds to train Al Qaeda forces located within Sudan. Hezbollah and Iranian officials provided intelligence and security training to Al Qaeda operatives, in Sudan and Lebanon, throughout 1991 to 1993. Iran also provided Al Qaeda with explosives designed to look like rocks.

42.    The Quds Force provided training in the use of explosives, assassinations and kidnapping to terrorist organizations, including Al Qaeda,

**A.    Embassy Bombing in Nairobi, Kenya**

43.     In or about 1993, various members of Al Qaeda, began to establish businesses and residences in Nairobi, Kenya.

44.     In 1993, Osama Bin Laden asked Ali Mohamed to set up an al-Qaeda cell in Nairobi, Kenya. Mohamed responded by setting up a cell of a dozen operatives.

45.     In late 1993, Bin Laden instructed Ali Mohamed to scout out possible United States targets in Nairobi, Kenya for a possible terrorist attack.  Mohamed later confessed that he took pictures, drew diagrams and wrote a report that he presented to bin Laden and top al-Qaeda advisors in Sudan.

46.     Based on the photographs provided by Mohamed, Bin Laden pointed to where a truck could be used as a suicide bomber at the United States Embassy in Nairobi, Kenya.

47.     According to an article published in the San Francisco Chronicle on September 21, 2001, United States Federal Bureau of Investigation (FBI) traced phone calls from Mohamed's California residences to Bin Laden associates in Nairobi, including bin Laden's personal secretary Wadih El-Hage ("El-Hage").

48.     El-Hage moved to Sudan in 1992 to work as Bin Laden's personal secretary and later moved to Nairobi, Kenya to run an Al-Qaeda cell in charge of a sham charity called "Help Africa People".

49.     Bin Laden relocated Al Qaeda to Afghanistan in 1996 and actively recruited Iranian members. Iranian border officials were instructed by Defendants not to stamp the passports of individuals heading from Iran to Afghanistan in order to help Al Qaeda use the passports of their members who may be killed on the front lines. Al Qaeda had continuous contact with Iranian security officials and Hezbollah, including advice and training, continued after Bin Laden's return to Afghanistan.

50.    In February 1998, Al Qaeda endorsed a *fatwah* under the banner of the "International Islamic Front for Jihad on the Jews and Crusaders." This *fatwah*, published in the publication of *Al-Quds al-'Arabi* on February 23, 1998, stated that Muslims should kill Americans – including civilians – anywhere in the world where they can be found.

51.    In or about June 1998, Mohamed Rashed Daoud Al- 'Owhali ("Owhali") and another Al Qaeda representative filmed a videotape to celebrate their anticipated "martyrdom" in a bombing operation to be conducted against the United States interests in East Africa.

52.    In or about late June or early July 1998, Al-Qaeda representatives Fahid Mohammed Ally Msalam ("Msalam") and Sheikh Ahmed Salim Swedan ("Swedan") purchased a Toyota Dyna truck in Mombasa, Kenya, and made alterations to the back of the truck.

53.    On or about July 31, 1998, Owhali, traveled from Pakistan to Nairobi Kenya.

54.    In or about early August 1998, Abdullah Ahmed Abdullah ("Abdullah"), Mohamed Sadeek Odeh ("Odeh") and other members of Al Qaeda traveled from Mombasa, Kenya to Nairobi, Kenya.

55.    During the first week of August 1998, Abdullah, Fazul Abdullah Mohammed ("Mohammed") and Owhali, met at a villa located in Nairobi, Kenya to make final preparations for the bombing of the United States Embassy.

56.    On August 7, 1998, beginning at approximately 9:30 a.m. local time, Mohammed, drove a pick-up truck to the vicinity of the United States Embassy while Owhali rode in the Toyota Dyna that contained a large bomb, to the United States Embassy in Nairobi, Kenya.

57.    On August 7, 1998, at approximately 10:30 a.m. Owhali got out of the Toyota Dyna as it approached the rear of the Embassy as another Al Qaeda operative drove the truck into the rear of the Embassy while firing a handgun at the windows of the Embassy building.

58.     Shortly thereafter, the Al Qaeda operative detonated an explosive device within the vehicle at a location near the rear of the Embassy building causing a total of more than 213 deaths, including Evans Onsongo.

59.     The Iranian Ministry of Information and Security, the Iranian agents in operation control of Hezbollah, operated with high level technical expertise in the use of explosives which would not have been available to Al Qaeda operatives in the absence of Iranian participation.

60.     At the time of the terrorist attack on the United States Embassy, Plaintiffs and/or Plaintiffs decedents were United States citizens, United States nationals, and/or employed by the Government of the United States and working under the scope of his/her employment and/or an individual performing a contract awarded by the United States government acting within the scope of the employee's employment at the time of the explosion.

61.     On August 6, 1998, one day before the attack on the Embassy of Nairobi was carried out, the Islamic Republic of Iran withdrew all of its diplomatic personnel from Nairobi.

62.     On August 11, 1998, the Islamic Liberation Army of the People of Kenya, an off-shoot of Al Qaeda, issued a statement in Arabic from London, England, taking responsibility for the Embassy bombing in Nairobi.

63.     On August 20, 1998, by Executive Order 13099, United States President William Clinton modified the Annex to Executive Order 12947 designating Bin Laden and key Al Qaeda operatives as individuals who threaten to disrupt the Middle East peace process.

64.     On October 18, 2001, four Al Qaeda members including Owhali, Odeh, and El-Hage were sentenced to life without parole for their role in the 1998 Embassy bombings in East Africa, including the bombing in Nairobi, Kenya.

**B.      United States Embassy Bombing in Dar Es Salaam, Tanzania**

65.     In or about March 1998, Al Qaeda operatives Khalfan Khamis Mohamed ("Khalfan") and Mustafa Mohamed Fadhil ("Fadhil") met in Dar Es Salaam, Tanzania and agreed to participate in a "jihad job".

66.     On or about May 4, 1998, Khalfan applied for a Tanzanian passport in the name of Zahran Nassor Maulid.

67.     In June 1998, Khalfan and Fahid Mohammed Ally Msalam ("Msalam") purchased a white Suzuki Samurai at a location in Dar Es Salaam and rented a house in the Ilala District of Dar Es Salaam, Tanzania.

68.     Throughout the summer of 1998, Fadhil, Khalafan, Msalam and Ahmed Khalfan Ghailani ("Ghailani") met at a residence on Amani Street in Dar Es Salaam to discuss the bombing of the United States Embassy in Tanzania.

69.     In or about July 1998, Ghailani and Ahmed Salim Swedan ("Swedan") purchased a 1987 Nissan Atlas truck in Dar Es Salaam, Tanzania, arranged for mechanical and welding work on the truck, and purchased two large truck batters, oxygen, and acetylene tanks.

70.     In July 1998, Mohamed Sadeek Odeh ("Odeh") was advised by Ahmed Mohamed Hamed Ali ("Ali") that Bin Laden had formed a united front against the United States with other Islamic extremist groups.

71.     Prior to August 2, 1998, Abdullah Ahmed Abdullah ("Abdullah") provided Odeh with a false passport to facilitate his travel to Afghanistan for the purpose of meeting with Bin Laden and other al Qaeda operatives.

72.     During the last week of July and first week of 1998, Fadhil, Khalfan, Msalam and another operative known as "Ahmed the German" met at a residence in the Ilala District of Dar Es Salaam to make final preparations for the bombing of the United States Embassy in Tanzania.

73.    In July or August 1998, Khalfan, Msalam, Ghailani, Fadhil, and others loaded boxes of TNT, cylinder tanks, batteries, detonators, fertilizer and sand bags into the back of the 1987 Nissan Atlas Truck.

74.    At approximately 10:40 a.m. on August 7, 1998, "Ahmed the German" detonated an explosive device located within the 1987 Nissan Atlas in the vicinity of the United States Embassy in Dar Es Salaam, Tanzania. The explosion severely damaged the United States Embassy and resulted in the death of at least 11 persons and injured at least 85.

75.    Plaintiffs' injuries were caused by a willful and deliberate act of terror by Al Qaeda, acting under direct and indirect sponsorship and/or direction, and with the direct material support and resources of the Defendants.

76.    In the early hours, prior to the bombing, facsimiles were sent to London, England, claiming responsibility for the embassy bombings in the name of the "Islamic Army for the Liberation of the Holy Places, which claimed that the Dar Es Salaam bombing was carried out by an Egyptian national.

77.    Khalfan, Fadhil, Msalam, Ali, Ghailani, Swedan, and Ahmed the German were members of Al Qaeda and perpetrated the bombing of the United States Embassy in Dar Es Salaam, Tanzania at the direction of and/or on behalf of Al Qaeda.

Throughout August 7, 2008 and August 8, 2008, two Al Qaeda operatives Adel Abdel Bary ("Bary") and Ibrahim Eidarous ("Eidarous") participated in the dissemination of claims of responsibility for the bombings of the United States Embassies in Dar Es Salaam.

78.    The actions of the agents and co-conspirators of the Defendants, and those who were substantially aided and abetted by Defendants, as set forth above, inflicted mental distress upon the families of the Plaintiffs. The material support rendered to co-conspirators of the

Defendants, and those who were substantially aided and abetted by Defendants, fits within the definition of material support as described by 18 U.S.C. § 2339 (A).

79.    The formation of Hezbollah and its emergence as a terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards, the Quds Force and the Iranian Ministry of Information. Al Qaeda was financed, technologically supported and/or commanded by Iranian military and intelligence operatives, including Hezbollah.

**COUNT I**
**ESTATE OF EVANS ONSONGO**
**WRONGFUL DEATH IN ACCORDANCE WITH THE PROVISIONS OF 28 U.S.C. §**
**1605 and  § 1605A AS AMENDED AND 16 D.C. CODE § 16-2701.**

80.    Plaintiff, Mary Onsongo, Personal Representative of the Estate of Evans Onsongo, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

81.    On August 7, 1998, when the explosive device described above was detonated, Evans Onsongo, an employee of the United States government working at the United States Embassy in Nairobi, Kenya, suffered fatal injuries resulting in his death. The death of Evans Onsongo was caused by a willful and deliberate act of extra judicial killing. The Defendants, through their agents, financed the attack and rendered material support to the activities of Al Qaeda that resulted in the serious injuries and deaths of Evans Onsongo. Those agents were at all times acting within the scope of their agency and acted on the direction of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security.

82.    The beneficiaries of Evans Onsongo, namely his wife Mary Onsongo, his children

Enoch Onsongo, Peris Onsongo and Vanice Onsongo, his father, Onsongo Mweberi, his mother, Salome Mweberi, and his siblings, Bernard Onsongo, Edwin Nyangau Onsongo, George Onsongo, Eunice Onsongo, Peninah Onsongo and Gladys Onsongo, as a direct and proximate consequence of the actions of the Defendants described above, for which the Defendants are vicariously, jointly and severally liable suffered pecuniary loss, including assistance to the beneficiaries, the loss of future earnings and accretions to the Estate of Evans Onsongo and the funeral and burial expenses.

WHEREFORE, Plaintiff, Mary Onsongo, demands judgment on behalf of the Estate of Evans Onsongo, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps, and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

**COUNT II**
**ESTATE OF EVANS ONSONGO**
**SURVIVAL CLAIM**
**12 D.C. Code § 12-101 AND 28 U.S.C. § 1605A**

83.     Plaintiff, Mary Onsongo, Personal Representative of the Estate of Evans Onsongo, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

84.     Decedent, Evans Onsongo, from the time of injury to death thereafter suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent has suffered damages.

WHEREFORE, Plaintiff, Mary Onsongo, demands judgment on behalf of the Estate of Evans Onsongo, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary

Guards Corps and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

**COUNT III**
**MARY ONSONGO, ENOCH ONSONGO, PERIS ONSONGO, VANICE ONSONGO,**
**ONSONGO MWEBERI, SALOME MWEBERI, BERNARD ONSONGO,**
**EDWIN NYANGAU ONSONGO, GEORGE ONSONGO, EUNICE ONSONGO,**
**PENINAH ONSONGO and GLADYS ONSONGO**
**SOLATIUM CLAIM PURSUANT TO 28 U.S.C. § 1605A AND IN ACCORDANCE WITH**
**THE FEDERAL AND STATE COMMON LAW FOR INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**

85.    Plaintiffs, Mary Onsongo, Enoch Onsongo, Peris Onsongo, Vanice Onsongo, Onsongo Mweberi, Salome Mweberi, Bernard Onsongo, Edwin Nyangau Onsongo, George Onsongo, Eunice Onsongo, Peninah Onsongo And Gladys Onsongo, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

86.    As a direct consequence of the actions of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran the Iranian Ministry of Information and Security, the Iranian Revolutionary Guards Corps, and the Quds Force, Plaintiffs have suffered extraordinary grief and mental anguish, in that the Defendants, acting through their agents and by their conduct intended through infliction of physical injury resulting in the serious injury and death upon Evans Onsongo to cause severe emotional distress upon his wife Mary Onsongo, his children Enoch Onsongo, Peris Onsongo and Vanice Onsongo, his father, Onsongo Mweberi, his mother, Salome Mweberi, and his siblings, Bernard Onsongo, Edwin Nyangau Onsongo, George Onsongo, Eunice Onsongo, Peninah Onsongo and Gladys Onsongo.

87.    The conduct described above was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a

civilized community and the emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it.

88.    As a direct and proximate result of the intentional infliction of emotional distress and extreme and outrageous actions of Defendants, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, Mary Onsongo, Enoch Onsongo, Peris Onsongo, Vanice Onsongo, Onsongo Mweberi, Salome Mweberi, Bernard Onsongo, Edwin Nyangau Onsongo, George Onsongo, Eunice Onsongo, Peninah Onsongo and Gladys Onsongo, demand judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

## COUNT IV
## ESTATE OF EVANS ONSONGO
## PUNITIVE DAMAGES PURSUANT TO 28 U.S.C. § 1605A

89.    Plaintiff, Mary Onsongo, Personal Representative of the Estate of Evans Onsongo, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

90.    The actions of the Defendants, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The Decedent was not engaged in war or in police duties. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C. § 1605A, the estate of decedent is thereby entitled to punitive damages.

WHEREFORE, Plaintiff, Mary Onsongo, demands judgment on behalf of the Estate of Evans Onsongo, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security, in the amount of TWO HUNDRED AND FIFTY MILLION DOLLARS ($250,000,000.00) plus costs.

**COUNT V**
**ESTATES OF JOSIAH OWUOR and EDWINA OWUOR**
**WRONGFUL DEATH IN ACCORDANCE WITH THE PROVISIONS OF 28 U.S.C. §**
**1605 and § 1605A AS AMENDED AND 16 D.C. CODE § 16-2701.**

91.     Plaintiff, Osborn Olwch Awala, Personal Representative of the Estates of Josiah Owuor and Edwina Owuor re-alleges each and every allegation set forth above with equal effect as if alleged herein.

92.     On August 7, 1998, when the explosive device described above was detonated, Josiah Owuor, an employee of the United States government working at the United States Embassy in Nairobi, Kenya, suffered fatal injuries resulting in his death. The death of Josiah Owuor was caused by a willful and deliberate act of extra judicial killing. Edwina Owuor, his wife died due to stress and depression, resulting from her husband, Josiah Owuor's death. The Defendants, through their agents, financed the attack and rendered material support to the activities of Al Qaeda that resulted in the serious injuries and deaths of Josiah Owuor and Edwina Owuor. Those agents were at all times acting within the scope of their agency and acted on the direction of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security.

93.     The beneficiaries of Josiah Owuor and Edwina Owuor, namely Osborn Olwch Awala, brother and brother-in-law, and Warren Awala, and Vincent Owour, children, as a direct

and proximate consequence of the actions of the Defendants described above, for which the Defendants are vicariously, jointly and severally liable suffered pecuniary loss, including assistance to the beneficiaries, the loss of future earnings and accretions to the Estates of Joseah Owuor and Edwina Owuor and the funeral and burial expenses.

WHEREFORE, Plaintiff, Osborn Olwch Awala, demands judgment on behalf of the Estates of Josiah Owuor and Edwina Owuor jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps, and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

**COUNT VI**
**ESTATES OF JOSIAH OWUOR and EDWINA OWUOR**
**12 D.C. Code § 12-101 AND 28 U.S.C. § 1605A**

94.    Plaintiff, Osborn Olwch Awala, Personal Representative of the Estates of Josiah Owuor and Edwina Owuor, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

95.    Decedents, Josiah Owuor and Edwina Owuor  from the time of injury to their deaths thereafter suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent have suffered damages.

WHEREFORE, Plaintiff, Osborn Olwch Awala, demands judgment on behalf of the Estates of Josiah Owuor and Edwina Owuor jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of

Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

### COUNT VII
### OSBORN OLWCH AWALA, WARREN AWALA, and VINCENT OWOUR SOLATIUM CLAIM PURSUANT TO 28 U.S.C. § 1605A AND IN ACCORDANCE WITH THE FEDERAL AND STATE COMMON LAW FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.     Plaintiffs, Osborn Olwch Awala, Warren Awala, and Vincent Owour repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

97.     As a direct consequence of the actions of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, Plaintiffs have suffered extraordinary grief and mental anguish, in that the Defendants, acting through their agents and by their conduct intended through infliction of physical injury resulting in the serious injury and deaths upon Josiah Owour and Edwina Owuor to cause severe emotional distress upon husband brother and brother-in-law Osborn Olwch Awala, and children, Warren Awala, and Vincent Owour.

98.     The conduct described above was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community and the emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it.

99.     As a direct and proximate result of the intentional infliction of emotional distress and extreme and outrageous actions of Defendants, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, Osborn Olwch Awala, Warren Awala, and Vincent Owour demand judgment jointly and severally against Defendants the Republic of Sudan, the Ministry

of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security,  and the Iranian Revolutionary Guards Corps, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

**COUNT VIII**
**ESTATES OF JOSIAH OWUOR AND EDWINA OWUOR**
**PUNITIVE DAMAGES PURSUANT TO 28 U.S.C. § 1605A**

100.    Plaintiff, Osborn Olwch Awala, Personal Representative of the Estates of Josiah Owuor and Edwina Owuor repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

101.    The actions of the Defendants, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The Decedents were not engaged in war or in police duties. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C. § 1605A, the estates of decedents are thereby entitled to punitive damages.

WHEREFORE, Plaintiff, Osborn Olwch Awala, demands judgment on behalf of the Estates of Josiah Owuor and Edwina Owuor, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security, in the amount of  TWO HUNDRED AND FIFTY MILLION DOLLARS ($250,000,000.00) plus costs.

## COUNT IX
## ESTATE OF ERIC ONYANGO
## WRONGFUL DEATH IN ACCORDANCE WITH THE PROVISIONS OF 28 U.S.C. § 1605 and § 1605A AS AMENDED AND 16 D.C. CODE § 16-2701.

102.    Plaintiff, Martha Achieng Onyango, Personal Representative of the Estate of Eric Onyango, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

103.    On August 7, 1998, when the explosive device described above was detonated, Eric Onyango, an employee of the United States government working at the United States Embassy in Nairobi, Kenya, suffered fatal injuries resulting in his death. The death of Eric Onyango was caused by a willful and deliberate act of extra judicial killing. The Defendants, through their agents, financed the attack and rendered material support to the activities of Al Qaeda that resulted in the serious injuries and deaths of Eric Onyango. Those agents were at all times acting within the scope of their agency and acted on the direction of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security.

104.    The beneficiaries of Eric Onyango, namely his sisters Martha Achieng Onyango and Juliana Atieno Onyango, as a direct and proximate consequence of the actions of the Defendants described above, for which the Defendants are vicariously, jointly and severally liable suffered pecuniary loss, including assistance to the beneficiaries, the loss of future earnings and accretions to the Estate of Eric Onyango and the funeral and burial expenses.

WHEREFORE, Plaintiff, Martha Achieng Onyango, demands judgment on behalf of the Estate of Eric Onyango, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian

Revolutionary Guards Corps, and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

### COUNT X
### ESTATE OF ERIC ONYANGO
### SURVIVAL CLAIM
### 12 D.C. Code § 12-101 AND 28 U.S.C. § 1605A

105.    Plaintiff, Martha Achieng Onyango, Personal Representative of the Estate of Eric Onyango, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

106.    Decedent, Eric Onyango, from the time of injury to death thereafter suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent has suffered damages.

WHEREFORE, Plaintiff, Martha Achieng Onyango, demands judgment on behalf of the Estate of Eric Onyango, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus costs.

### COUNT XI
### MARTHA ACHIENG ONYANGO and JULIANA ATIENO ONYANGO
### SOLATIUM CLAIM PURSUANT TO 28 U.S.C. § 1605A AND IN ACCORDANCE WITH
### THE FEDERAL AND STATE COMMON LAW FOR INTENTIONAL INFLICTION OF
### EMOTIONAL DISTRESS

107.    Plaintiffs, Martha Achieng Onyango and Juliana Atieno Onyango, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

108.    As a direct consequence of the actions of the Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran the Iranian

Ministry of Information and Security, the Iranian Revolutionary Guards Corps, and the Quds Force, Plaintiffs have suffered extraordinary grief and mental anguish, in that the Defendants, acting through their agents and by their conduct intended through infliction of physical injury resulting in the serious injury and death upon Eric Onyango to cause severe emotional distress upon his sisters Martha Achieng Onyango and Juliana Atieno Onyango.

109.    The conduct described above was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community and the emotional distress suffered by Plaintiffs was so severe that no reasonable person could be expected to endure it.

110.    As a direct and proximate result of the intentional infliction of emotional distress and extreme and outrageous actions of Defendants, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, Martha Achieng Onyango and Juliana Atieno Onyango, demand judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security,  and the Iranian Revolutionary Guards Corps,  in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

### COUNT XII
### ESTATE OF ERIC ONYANGO
### PUNITIVE DAMAGES PURSUANT TO 28 U.S.C. § 1605A

111.    Plaintiff, Martha Achieng Onyango, Personal Representative of the Estate of Eric Onyango, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

112.    The actions of the Defendants, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that

govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The Decedent was not engaged in war or in police duties. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C. § 1605A, the estate of decedent is thereby entitled to punitive damages.

WHEREFORE, Plaintiff, Martha Achieng Onyango, demands judgment on behalf of the Estate of Eric Onyango, jointly and severally, against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Revolutionary Guards Corps and the Iranian Ministry of Information and Security, in the amount of TWO HUNDRED AND FIFTY MILLION DOLLARS ($250,000,000.00) plus costs.

**COUNT XIII
CLAIM OF IRENA KUNG'U
PURSUANT TO 28 U.S.C. § 1605A
AND IN ACCORDANCE WITH FEDERAL AND STATE COMMON
LAW FOR BATTERY**

113.    Plaintiff, Irena Kung'U , repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

114.    On August 7, 1998, members of Al Qaeda by use of an explosive device at the United States Embassy in Nairobi, Kenya, as above described, willfully, violently and forcefully battered and did violence upon the body of the Plaintiff Irena Kung'U, a United States employee, inflicting severe and permanent injuries upon him resulting in great pain and suffering, which injuries required and continue to require extensive medical treatment, have necessitated the expenditure of funds, inter alia, for hospitals, physician's services, nursing care, and rehabilitation treatment, have deprived the Plaintiff of earning capacity and have permanently disabled the said Plaintiff. The willful, wrongful, and intentional acts of Al Qaeda were funded

and directed by Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, and constituted a battery upon the person of the Plaintiff.

WHEREFORE, Plaintif, Irena Kung'U , demands judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

### COUNT XIV
### CLAIM OF IRENA KUNG'U
### PURSUANT TO 28 U.S.C. § 1605A
### AND IN ACCORDANCE WITH FEDERAL AND STATE COMMON
### LAW FOR ASSAULT

115.    Plaintiff, Irena Kung'U, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

116.    The members of Al Qaeda, as above alleged, intentionally and willfully placed the Plaintiff, in fear and apprehension of harm as a direct result of their actions including the physical abuse they inflicted upon him. The willful, wrongful, and intentional acts of Al Qaeda were funded and directed by Defendants, the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, and the Plaintiff was injured in that he endured extreme mental anguish, physical injury and pain and suffering.

WHEREFORE, Plaintiff, Irena Kung'U, demands judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the

Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

**COUNT XV**
**CLAIM OF IRENA KUNG'U**
**PURSUANT TO 28 U.S.C. § 1605A**
**AND IN ACCORDANCE WITH FEDERAL AND STATE COMMON**
**LAW FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

117.    Plaintiff, Irena Kung'U, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

118.    As a direct and proximate result of the willful, wrongful and intentional acts of Al Qaeda members, whose acts were funded and directed by Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, Plaintiff endured extreme mental anguish and pain and suffering, suffered the loss of the company of his family and friends, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Irena Kung'U, demands judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) plus costs.

**COUNT XVI**
**CLAIM OF IRENA KUNG'U**
**PURSUANT TO 28 U.S.C. § 1605A**
**PUNITIVE DAMAGES**

119.    Plaintiff, Irena Kung'U, repeats and re-alleges each and every allegation set forth

28

above with equal effect as if alleged herein.

120.    The actions of the Al Qaeda members, as above set forth, were intentional and malicious and in willful, wanton and reckless disregard of Plaintiff's rights and physical well being. All of the acts of Al Qaeda were facilitated by funding, training and support by the Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C. § 1605A, Plaintiff is thereby entitled to punitive damages.

WHEREFORE, Plaintiff, Irena Kung'U, demands judgment jointly and severally against Defendants the Republic of Sudan, the Ministry of the Interior of the Republic of the Sudan, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, in the amount of TWO HUNDRED AND FIFTY MILLION DOLLARS ($250,000,000.00) plus costs.

Dated: August 6, 2008

Respectfully submitted,

_____

Michael J. Miller, Esq.
Bar No. 397689
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224

_____

Allen L. Rothenberg, Esq.
Bar No. 328088
THE LAW FIRM OF ALLEN L. ROTHENBERG
1420 Walnut Street
Philadelphia, PA 19102
Tel: (800) 624-8888

_____

Gavriel Mairone
Bar No. 6181698
MANN & MAIRONE
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (212) 792 4005

**JS-44**
**(Rev.1/05 DC)**

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Mary Onsongo, individually and for the Estate of Evans Onsongo    ????? | Republic of Sudan, et al |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    Nairobi, Kenya
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Michael J. Miller
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960

Case: 1:08-cv-01380
Assigned To : Friedman, Paul L.
Assign. Date : 8/7/2008
Description: General Civil

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ◉ 3 | ○ 3 | Foreign Nation | ○ 6 | ◉ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

| ◉ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Plaintiffs bring this action pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 35,000,000.00   Check YES only if demanded in complaint   JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 8/6/2008    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.